**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GLORYA C. ASKEW,**

                  **Plaintiff,**          **1:09-cv-553**
                                        **(GLS/RFT)**

          **v.**

**NEW YORK STATE; NEW YORK STATE**
**DEPARTMENT OF CORRECTIONAL**
**SERVICES; GLENN S. GOORD,**
Commissioner; **BRIAN FISCHER,**
Commissioner; **JOHN NUTTALL,** Deputy
Commissioner for Program Services;
**KENNETH S. PERLMAN,** Deputy
Commissioner for Program Services;
**REINALDO MEDINA,** Assistant
Commissioner and Acting Deputy
Commissioner for Program Services;
**MARY BOGAN DEBELMONTE,** Assistant
Commissioner for Program Services;
**MARK LEONARD,** Director, Department
of Ministerial, Family, and Volunteer
Services; **OMEGA ALSTON,** Assistant
Director, Department of Ministerial, Family,
and Volunteer Services; **ISRAEL RIVERA,**
Associate Commissioner, Labor Relations;
**CHARLES HARVEY,** Director of Diversity
Management; **PETER B. BROWN,** Director
of Labor Relations; and **MARK MILLER,**
Assistant Inspector General,

                  **Defendants.**

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|

**FOR THE PLAINTIFF:**
Sussman, Watkins Law Firm         MICHAEL H. SUSSMAN, ESQ.
55 Main Street, Suite 6
P.O. Box 1005
Goshen, NY 10924

**FOR THE DEFENDANTS:**
HON. ANDREW M. CUOMO         ADRIENNE J. KERWIN
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**District Court Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Glorya Askew commenced this action against defendants New York State and New York State Department of Correctional Services (DOCS) under Title VII of the Civil Rights Act of 1964,[1] alleging gender, race, color, and religious discrimination and unlawful retaliation. (*See* Compl., Dkt. No. 1.)   Askew also brought suit for discrimination and deprivation of her First Amendment rights pursuant to 42 U.S.C. §§ 1981 and 1983 against defendants Glenn Goord, Brian Fischer, John Nuttall,

_____

[1] 42 U.S.C. § 2000e, *et seq.*

2

Kenneth Perlman, Reinaldo Medina, Mary Bogan DeBelmonte, Mark

Leonard, Omega Alston, Israel Rivera, Charles Harvey, Peter Brown, and

Mark Miller, in their individual and official capacities.  (*See id.*)  Pending is

defendants' motion to dismiss.  (Dkt. No. 4.)  For the reasons that follow,

the court grants defendants' motion in part and denies in part.

## II.  Background[2]

### A.   Factual History

Plaintiff Glorya Askew, an African-American Protestant minister with

a master's degree in social work and a doctoral degree in ministry and

pastoral care, began her employment with DOCS in 1984 as a chaplain.

(*See* Compl. ¶¶ 22, 26, Dkt. No. 1.)  Since May 31, 2001, Askew has

worked as a Ministerial Program Coordinator (MPC).  (*See id.* at ¶¶ 23, 25.)

As an MPC, Askew reports to the Director of Ministerial, Family, and

Volunteer Services, Mark Leonard, a white Catholic deacon.  (*See id.* at ¶¶

14, 23, 35.)  As the Protestant MPC, Askew serves as the liaison between

(1) the Central Office of DOCS and the Protestant inmate population

statewide and (2) the Central Office and the chaplains and staff who serve

_____

[2]For the purposes of this motion, the court accepts as true the facts as alleged in the complaint.  (*See* Dkt. No. 1.)

the inmate population.  (*See id.*)  For nineteen years, Askew has also taught courses in ministry and pastoral counseling at the New York Theological Seminary as an adjunct professor.  (*See id.* at ¶ 27.)

As the only female and only African-American Protestant MPC, Askew alleges that DOCS and her supervisors discriminated against her in the manner they approved of meetings and training opportunities, assigned duties and responsibilities, offered job opportunities and speaking appearances, and relocated her from New York City to Albany.  (*See id.* at ¶¶ 28-32.)  Askew alleges that Leonard, who was appointed by Deputy Commissioner of Program Services John Nuttall, consistently discriminated against Askew in favor of the Catholic MPC regarding assignments, career advancement opportunities, and training, despite Askew's "greater qualifications, experience and seniority."  (*See id.* at ¶¶ 36-39.)  In addition, Askew's white managers and co-workers allegedly referred to her as "Muller's Revenge," which Askew posits refers to her predecessor, Reverend Edwin Muller, and is derived from "Montezuma's Revenge." (*See id.* at ¶ 31.)

Askew also alleges that in response to complaints made regarding her discriminatory treatment, defendants intentionally subjected her to

4

unlawful retaliation individually and in concert.  (*See id.* at ¶ 33.)  On June

13, 2003, Askew met with Leonard to object to discriminatory practices

regarding her work assignments, training opportunities, travel reporting,

and office staff support.  (*See id.* at ¶ 40.)  According to Askew, Leonard

told her during this meeting that "[she] should never have gotten [the MPC]

position because [she is] black and a woman."  (*Id.*)  After raising similar

complaints to Leonard on April 28, 2004, Leonard allegedly told Askew to

file a formal grievance.  (*See id.* at ¶ 42.)  On May 5 and 28, 2004, Askew

informally met with Leonard and Nuttall to raise the same issues of

discrimination.  (*See id.* at ¶ 43.)  According to Askew, she was accused of

being a "conflict maker" at the meeting and the discrimination continued

"unabated" afterwards.  (*See id.*)

Askew further alleges that DOCS and her supervisors discriminated

against her in determining promotions and transfers.  In March 2005,

Askew applied for and was denied the position of Director of Volunteer

Services, which was filled by a "less qualified" white woman.  (*Id.* at ¶ 45.)

According to Askew, the personnel office told her that as an MPC she held

an appointed position and was therefore not qualified to be Director, even

though the job posting did not mention any such requirements.  (*See id.*)

On February 9, 2006, Askew's request to serve in an administrative position in Harlem was denied and Nuttall appointed a white male former-Catholic priest to the position.  (*See id.* at ¶¶ 46-47.)  Askew contends that in making this appointment DOCS did not follow the standard practice of submitting the appointee's qualifications to the New York State Council of Churches.  (*See id.* at ¶¶ 47-49.)

On September 21, 2006, Omega Alston, an African-American woman, was appointed Assistant Director of Ministerial Services, a position which Askew repeatedly inquired to Leonard about but was told she was ineligible based on her appointed status.  (*See id.* at ¶¶ 50-51.)  However, according to Askew, the position was an appointed position.  (*See id.*)  And Askew contends that Alston had neither the experience nor the qualifications for the position.  (*See id.* at ¶¶ 51-52.)  After her appointment, Alston supervised Askew and allegedly continued DOCS's discriminatory practices, which included telling others that she was appointed "to clean house" and "get rid of" Askew.  (*See id.* at ¶¶ 53-54.)

In September 2006, DOCS allegedly began to reorganize the ministerial program by, among other things, downgrading Askew's salary and shifting some of the MPCs' authority to Alston.  (*See id.* at ¶ 55.)

According to Askew, this downgrade was "part of [a] continued effort by

DOCS to dilute the role of the church in the life of inmates, and to place the

chaplains under direct control of secular officials, in order to restrict

religious freedom for chaplains and inmates." (*Id.* at ¶ 56.)  Upon learning

of Askew's concerns at a meeting in November 2006, Leonard allegedly

told Askew he was "going to the New York State Council of Churches and

personally have [her] removed from [her] position." (*Id.* at ¶ 60.)  Yet, on

November 28, 2006, Askew received a letter from the New York

Department of Civil Service stating that her salary downgrade was "an

administrative error." (*Id.* at ¶ 62.)

Askew additionally alleges that DOCS and her supervisors retaliated

against her for opposing discriminatory actions and for exercising her rights

of freedom of religion and speech.  Specifically, Askew contends that while

male MPCs were allowed to choose and attend faith-related events, Alston

refused to allow Askew to speak at or participate in Protestant faith and

community activities around the state, including workshops in New York

City and Mount Vernon in January 2007, and in Binghamton in October

2007.  (*See id.* at ¶¶ 63-65, 69.)  With regards to the Binghamton

workshop, Askew alleges that in spite of seeking Alston's prior approval to

attend the workshop, Peter Brown, Director of Labor Relations, charged

Askew with official misconduct for attending the meeting without requesting

and obtaining prior approval.  (*See id.* at ¶ 70.)  During this period, Askew's

supervisors also began scrutinizing her travel vouchers.  (*See id.* at ¶ 66.)

And in late November 2007, after being notified by the Finance Office that

her September and October time records had not been submitted, Askew's

confidential personnel file went missing.  (*See id.* at ¶ 72.)  According to

Askew, she found the file—which contained the unsigned timesheets—on a

chair in Leonard's office unsecured and in plain view.  (*See id.* at ¶¶ 73-

74.)

On December 1, 2007, Askew filed a formal grievance against her

supervisors based on, among other things, their alleged (1) failure to

submit Askew's time records to the Finance Office, (2) refusal to meet with

Askew over a six-month period, and (3) arbitrary and capricious

determinations regarding Askew's responsibilities.  (*See id.* at ¶ 74.)  In

addition, Askew filed a formal grievance against Leonard for failing to

protect her confidential file and for engaging in a pattern of discriminatory

conduct.  (*See id.* at ¶ 75.)  Askew also filed a grievance by mail to

Kenneth Perlman, Deputy Commissioner for Program Services, seeking his

review of the grievance proceedings.  (*See id.* at ¶ 76.)

Allegedly in response to Askew's grievance, Leonard issued a formal counseling, which stated that Askew "searched through [his] papers looking for documents."  (*Id.* at ¶ 77.)  Askew then submitted a written letter accusing Leonard of discriminatory actions, noting that she feared additional reprisals, and requesting that the formal counseling be removed from her file and that her personnel records be returned to the Personnel Department.  (*See id.*)  On December 14, Leonard conducted a grievance hearing, at which Askew was not allowed representation.  (*See id.* at ¶ 78.)  On December 17, Alston submitted a letter regarding these hearings to Perlman.  (*See id.* at ¶ 79.)  According to Askew, Alston falsely stated in the letter that she discussed the grievances with Askew, that Askew chose to proceed without representation, that Askew was not submitting her travel and budget submission in a timely manner, and that Askew's submissions were difficult to review and understand.  (*See id.* at ¶¶ 79-82.)  Following this episode, Askew filed another grievance against Leonard for violating the grievance procedures and for conducting proceedings of which he was the subject.  (*See id.* at ¶ 85.)

In January 2008, Askew met with Mary Bogan DeBelmonte, Assistant

Commissioner of Program Services, to review her grievances and to discuss her desire for structural and substantive changes in the department.  (*Id.* at ¶ 86.)  DeBelmonte issued a decision denying Askew's request to have Leonard's formal counseling removed from her file.  (*See id.* at ¶ 87.)  Askew appealed this determination to Brown, asserting that she was a target of discrimination and retaliation, and that since airing her grievances, she had been investigated by the Inspector General Office, divested of her corporate credit card and travel privileges, and restricted to office hours.  (*See id.* at ¶¶ 88-89.)  Askew also notified Brown that she feared reprisals from Leonard based on disparaging and threatening remarks he made to her.  (*See id.* at ¶ 90.)

Leonard subsequently initiated an investigation into Askew's time and expense records and her outside employment.  (*See id.* at ¶ 91.)  Mark Miller, Assistant Inspector General, conducted the investigation.  (*See id.* at ¶ 93.)  In his report, Miller stated—falsely, according to Askew—that Askew misrepresented her employment with the Seminary as "volunteer work." (*See id.* at ¶ 94.)  And on May 9, 2008, Brown issued a "Notice of Charges" against Askew for submitting false travel and time records, making false statements, attending the October 2007 workshop without approval, and

arriving to work late and leaving early.  (*See id.* at ¶¶ 70, 95.)  The charges

are pending in a New York Civil Service Section 75 hearing before an

arbitrator.

**B.   Procedural History**

On March 19, 2008, Askew filed a verified complaint with the New

York State Division of Human Rights (NYSDHR) and the Equal

Employment Opportunity Commission (EEOC) charging DOCS with sex,

race, color, and creed discrimination and unlawful retaliation.  (*See id.* at ¶

97; *see also* Def. Mem. of Law, App. A, Dkt. No. 4:3.)  On October 1, 2008,

the NYSDHR dismissed Askew's complaint as unsupported by the

evidence.  (*See* Compl. ¶ 97, Dkt. No. 1.)  The EEOC adopted those

findings on February 11, 2009, and notified Askew of her right to file a civil

action under Title VII.  (*See id.* at ¶ 4.)

On May 11, 2009, Askew commenced this action against New York

State and DOCS pursuant to Title VII and against Goord, Fischer, Nuttall,

Perlman, Medina, DeBelmonte, Leonard, Alston, Rivera, Harvey, Brown,

and Miller, in their individual and official capacities, pursuant to 42 U.S.C.

§§ 1981 and 1983.  (*See* Compl., Dkt. No. 1.)  Askew claimed that DOCS

violated Title VII by unlawfully discriminating against her on the basis of

gender, race, color, and religion and retaliating against her for engaging in protected activity.  (*See id.* at ¶¶ 103-14.)  As to the individual defendants, Askew claimed that they deprived her of and retaliated against her for exercising her First Amendment rights of free speech and free exercise of religion.  (*See id.* at ¶¶ 115-33.)  Askew further alleged that these defendants, individually and in concert, violated her equal protection rights by discriminating against her based on her gender and race, and on the basis of race in making and enforcing contracts.  (*See id.* at ¶¶ 33, 138-43.)  Askew also asserted a *Monell* claim against New York State and the individual defendants for failing to train DOCS employees about workers' First Amendment rights to free speech.  (*See id.* at ¶¶ 134-37.)  Based on these claims, Askew sought (1) damages for physical suffering, medical symptoms, and severe emotional distress, (2) punitive damages against the individual defendants, and (3) attorneys' fees and costs.  (*See id.* at 24, 30-31.)

On July 6, 2009, defendants filed a motion to dismiss.  (*See* Dkt. No. 4.)  Specifically, the individual defendants moved to dismiss the claims against them in their entirety, while New York State and DOCS moved to dismiss any claims that are untimely or unexhausted under Title VII.  (*See*

Def. Mem. of Law at 1, Dkt. No. 4:2.)  In addition, defendants moved to dismiss any § 1983 claims that were not timely filed.  (*See id.*)

### III.  Standard of Review

The standard of review under FED. R. CIV. P. 12(b)(6) is well established and will not be repeated here.  For a full discussion of the standard the court refers the parties to its decision in *Dixon v. Albany County Bd. of Elections*, No. 1:08-CV-502, 2008 WL 4238708, at *2 (N.D.N.Y. Sept. 8, 2008).  In reviewing claims of discrimination or retaliation, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (internal quotation marks and citation omitted).

### IV.  Discussion

### A.    Title VII Claims and Timeliness

Under Title VII, it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).

13

Furthermore, it is "an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing ...."  42 U.S.C. § 2000e-3(a).

To maintain a suit under Title VII, a plaintiff "must file timely administrative charges" before bringing suit in federal court pursuant to Title VII. *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006).  If the plaintiff has instituted proceedings with an appropriate state agency, she "has 300 days from the occurrence of an adverse employment action to file charges with the EEOC." *Id.* (citing 42 U.S.C. § 2000e-5(e)(1)).  This timeliness requirement operates "analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  Under this statutory limitation, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  In general, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and therefore each act "starts a new clock for filing charges." *Morgan*, 536 U.S. at 113-14.  Yet, in limited

14

circumstances, acts falling outside the limitations period can constitute part of a "continuing violation" that "occurs over a series of days or perhaps years." *Id.* at 115.  A continuing violation exists where "discriminatory acts [are] committed under an ongoing policy of discrimination," *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (internal quotation marks and citation omitted), or "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

A plaintiff may use prior acts "as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.  Thus, "evidence of an earlier alleged [discriminatory or] retaliatory act may constitute relevant background evidence in support of [a] timely claim ... [and] may be considered to assess liability on the timely alleged act." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Klein v. N.Y. Univ.*, No. 07 Civ. 160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008).

Here, while it is likely that many of Askew's allegations may not serve as predicates for discriminatory or retaliatory conduct, it would be

15

premature at this stage to dismiss any of Askew's causes of action for that

reason.  First, it is possible that some alleged acts falling outside the

limitations period were part of an overall continuing violation that occurred

under an ongoing policy or unremedied practice of discrimination.

Moreover, many of the discrete acts that Askew alleges may serve as

background evidence to her timely claims.  Therefore, at this juncture,

Askew has sufficiently alleged discriminatory and retaliatory conduct by

DOCS that arose or caused injury within 300 days of March 19, 2008.

Accordingly, DOCS's motion to dismiss Askew's Title VII claims for

untimeliness is denied.

**B.**     **Title VII Claims and Exhaustion**

Title VII limits a district court's jurisdiction to "claims that are either

included in an EEOC charge or are based on conduct subsequent to the

EEOC charge which is 'reasonably related to that alleged in the EEOC

charge."  *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d

1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds*, Civil

Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.  Exhaustion is

"essential" because it "gives the administrative agency an opportunity to

investigate, mediate, and take remedial action ...."  *Id.* at 1401-02 (citing

*Stewart v. U.S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d

Cir. 1985)) (internal quotation marks omitted).  Claims not included in an

EEOC charge may still be asserted in a subsequent civil action if the claims

are "sufficiently related to the allegations in the charge that it would be

unfair to civil rights plaintiffs to bar such claims in a civil action."  *Id.* at

1402.  This exception applies where "the conduct complained of would fall

within the scope of the EEOC investigation which can reasonably be

expected to grow out of the charge of discrimination."  *Terry v. Ashcroft*,

336 F.3d 128, 151 (2d Cir. 2003) (quotation marks and citation omitted).

While some of the discrete acts Askew alleges in her complaint were

not specifically included in the verified complaint filed with the NYSDHR

and EEOC, it is clear that Askew's verified complaint alleged sex, creed,

race, and color discrimination and unlawful retaliation.  Askew was under

no obligation to provide every discrete act upon which she based her

NYSDHR and EEOC charges.  Rather, the charges raised in her verified

complaint were precisely the type that would give the NYSDHR and EEOC

adequate notice to investigate the underlying instances of discrimination

and retaliation.  *See Williams*, 458 F.3d at 70.  In her verified complaint and

accompanying forms, Askew outlined the basis of her charges with

17

substantial detail.  Furthermore, any discrete act or conduct complained of

here that was not specified in her verified complaint would have fallen

within the reasonable scope of the EEOC investigation.  Askew has

sufficiently exhausted her claims of sex, race, color, and religious

discrimination and retaliation and is entitled to assert those claims in

federal court.  *See Butts*, 990 F.2d at 1401.  Therefore, to the extent DOCS

seeks to dismiss any of Askew's claims for failure to exhaust her

administrative remedies, the motion is denied.

## C.   *Monell* Claims

As defendants point out, and as Askew concedes, liability under

*Monell* pursuant to § 1983 attaches solely to municipalities, and not to the

State or its individual officers.  (*See* Def. Mem. of Law at 15, Dkt. No. 4:2;

Pl. Mem. of Law at 15 n.3, Dkt. No. 9.)  Therefore, to the extent that Askew

asserts claims under §§ 1981 and 1983 against New York State, DOCS,

and the individual defendants in their official capacities, those claims are

dismissed.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989);

*see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733-36 (1989);

*Bogle–Assegai v. Connecticut*, 470 F.3d 498, 509 (2d Cir. 2006) (affirming

dismissal of §§ 1981 and 1983 claims against state agency as barred by

Eleventh Amendment).

**D.     Section 1983 and Timeliness**

Section 1983 actions are governed by the "general or residual state statute of limitations for personal injury actions." *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (internal quotation marks and citation omitted). As a result, New York's three-year statute of limitations for a personal injury, N.Y.C.P.L.R. § 214(5), applies to § 1983 actions in New York. *See Ormiston*, 117 F.3d at 71. However, the accrual date is governed by federal law, which establishes that the statute of limitations begins to run at the "point in time when the plaintiff knows or has reason to know of the injury which is the basis of [her] action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks and citations omitted). Accordingly, "[t]he crucial time for accrual purposes is when the plaintiff becomes aware that [she] is suffering from a wrong for which damages may be recovered in a civil action." *Id.* at 192. Thus, it is the "wrongful act ... which is actionable." *Id.* Yet, "[w]here no single act is sufficiently decisive to enable a person to realize that [she] has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent." *Id.*

19

The Equal Protection Clause protects public employees from various forms of discrimination on the basis of race or gender.  *See Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); *see also Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).  Except for the fact that a § 1983 claim can be brought against individuals, the analysis for § 1983 claims of employment discrimination is otherwise similar to that used for Title VII employment discrimination claims.  *See Demoret*, 451 F.3d at 149.  The Second Circuit has therefore interpreted the *Morgan* rationale to apply to § 1983 claims as well.  *See Glynn v. County of Suffolk*, 50 Fed. Appx. 58, 58-59 (2d Cir. 2002) (directing district court to consider § 1983 claims in light of *Morgan*).  Accordingly, while "discrete discriminatory acts are not actionable if time barred," a plaintiff may rely on prior acts "as background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113.

Therefore, for the same reasons discussed above regarding Askew's Title VII claims, it would be imprudent to dismiss Askew's § 1983 claims based on untimeliness.

## E.   Section 1983 and Personal Involvement

"It is well settled ... that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under

§ 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal

quotation marks and citations omitted).  Accordingly, where money

damages are sought, liability of supervisory officials under § 1983 cannot

be based on the doctrine of respondeat superior.  *See Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, a plaintiff must "allege a

tangible connection between the acts of a defendant and the injuries

suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  A tangible

connection may be present where:

> (1) [T]he defendant participated directly in the alleged
> constitutional violation, (2) the defendant, after being informed
> of the violation through a report or appeal, failed to remedy the
> wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, [or] (4) the defendant
> was grossly negligent in supervising subordinates who
> committed the wrongful acts ....

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted); *see*

*also Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).  However, the

mere fact that a supervisory official "was in a high position of authority is an

insufficient basis for the imposition of personal liability." *McKinnon v.*

*Patterson*, 568 F.2d 930, 935 (2d Cir. 1977).

Defendants contend that Askew has failed to alleged personal

involvement by Goord, Fischer, Nuttal, Perlman, Medina, DeBelmonte, Alston, Rivera, Harvey, Brown, and Miller.  (*See* Def. Mem. of Law at 10-15, Dkt. No. 4:2.)  As a preliminary matter, the cases defendants rely on are inapposite for several reasons.  The majority of the decisions defendants rely on were made on summary judgment, after the parties had engaged in discovery, and presumably after the claims being dismissed had survived Rule 12 motions to dismiss.  Moreover, defendants' citation to *Vega v. Artus*, 610 F. Supp.2d 185, 199 (N.D.N.Y. 2009), misses the mark.  Unlike *Vega*, where a supervisor's denial of a grievance complaint occurred after the alleged misconduct had ceased and was no longer remediable, here, the conduct Askew is seeking to remedy can be characterized as remediable and continuing.  Lastly, defendants' reliance on *Flores v. Graphtex*, No. 5:96-CV-820, 2008 WL 5378118 (N.D.N.Y. Dec. 23, 2008), which dealt with a Title VII retaliation claim, is misplaced in the context of § 1983 claims.[3]

---

[3]Similar to Title VII, a First Amendment retaliation claim requires a plaintiff to allege that "(1) [her] speech was constitutionally protected, (2) [she] suffered an adverse employment decision, and (3) a causal connection exists between [her] speech and the adverse employment determination, so that it can be said that [her] speech was a motivating factor in the determination."  *Morris v. Landau*, 196 F.3d 102, 110 (2d Cir. 1999).  Unlike a Title VII retaliation claim, though, a First Amendment claim of retaliation requires a plaintiff to allege that she spoke as a citizen "on a matter of ... political, social, or other concern to the community ...."  *Morris*, 196 F.3d at 110 (internal quotation marks and citations omitted).  Accordingly, with respect to Askew's § 1983 claim of retaliation, defendants' assertion that

Askew has alleged that after experiencing a salary downgrade and a

loss of responsibilities and authority in September 2006, she reported her

concerns to the New York State Council of Churches, "launched a vigorous

campaign to oppose the reduction in status of MPCs," spoke out about

religious and administrative restrictions on MPCs and chaplains during a

meeting of chaplains in November 2006, and brought her concerns to the

New York State Department of Civil Service.  (*See* Compl. ¶¶ 55-61, Dkt.

No. 1.)  According to Askew, her concerns were based on "promoting

constitutionally-protected freedom of religion and the safety and well-being

of the approximately 63,000 inmates of DOCS, their families, the religious

institutions which serve them and the communities from which the inmates

come and to which they return."  (*Id.* at ¶ 61.)  Thus, insofar as defendants

rely on *Flores* to refute the existence of any causal nexus between Askew's

statements and Alston's alleged retaliatory conduct, Askew has sufficiently

alleged that her supervisors, including Alston, either engaged in direct

retaliation against her for making these (and other) statements or were

aware of this retaliation and failed to adequately supervise the participants

---

Alston cannot be held liable for any conduct alleged to have occurred before Askew filed a
grievance, misunderstands the scope of the First Amendment.

or remedy these wrongs.

Askew further alleges that she filed grievances with and/or participated in meetings pursuant to those grievances with Alston, Medina, Nuttall, Perlman, DeBelmonte, and Brown, and that these individuals either participated directly in the violations or knew of and failed to remedy the alleged wrongs.  And as to Miller, Askew has alleged he knew her rights were being violated, he participated in malicious investigations, and he engaged in misconduct with a discriminatory or retaliatory animus.  Miller contends that since he conducted the investigation at Leonard's request based on information provided by DOCS officials, he is entitled to qualified immunity for conducting the investigation and preparing the report.  (*See* Def. Mem. of Law at 13 n.7, Dkt. No. 4:2 (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).)  Under the qualified-immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Based on Askew's allegations, there is no question that engaging in an improper investigation of a public employee for discriminatory or retaliatory

24

purposes would violate clearly established constitutional law.  *See Behrens*

*v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is

the defendant's conduct *as alleged in the complaint* that is scrutinized for

'objective legal reasonableness.'") (quoting *Harlow*, 457 U.S. at 819).

There are, however, questions that remain as to Miller's intent, knowledge,

and role in the investigation.  *See Jemmott v. Coughlin*, 85 F.3d 61, 66-68

(2d Cir. 1996).  Accordingly, at this stage, Askew has provided sufficient

factual allegations that defendants Alston, Medina, Nuttall, Perlman,

DeBelmonte, Brown, and Miller were personally involved in depriving her of

her constitutional rights.

For similar but more tenuous reasons, Askew has met her burden in

alleging that Harvey, as the Director of Labor Relations, and Rivera, as the

Associate Commissioner of Labor Relations and supervisor of Brown, knew

or should have known about the deprivations Askew was allegedly

experiencing and failed to adequately supervise or train Askew's immediate

supervisors.  The court recognizes that these claims rest on thin reeds

indeed, namely scant factual allegations and demanding legal standards.

*See Villante v. Dep't of Corrections of City of N.Y.*, 786 F.2d 516, 519 (2d

Cir. 1986) ("[A] failure to train or supervise [must be] sufficiently egregious

to amount to gross negligence or deliberate indifference ....").
Nonetheless, as we are in the preliminary throes of this lawsuit, the motion
to dismiss Askew's claims against Harvey and Rivera is denied.  *See Aiken
v. Nixon*, 236 F. Supp.2d 211, 229 (N.D.N.Y. 2002).

However, the court is unable to find any factual allegations in
Askew's complaint from which to discern a cognizable claim against
Commissioners Fischer and Goord.  The sole fact that these two
individuals maintained high positions of authority during the periods
relevant to this action is not sufficient to establish personal liability.
Accordingly, the court dismisses the claims against Fischer and Goord, but
grants Askew leave to amend her complaint provided she can assert facts
sufficiently demonstrating Fischer or Goord's personal involvement.

## F.   Section 1983 and Freedom of Religion

"Section 1983 creates a cause of action against any person who,
acting under color of state law, deprives another of 'any rights, privileges,
or immunities secured by the Constitution and laws' of the United States
including the First Amendment right to the free exercise of religion."
*LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 426 (2d Cir. 1995) (citations
omitted).  To prevail on a free exercise claim, a public employee must

"show that a state action sufficiently burdened [her] exercise of religion."
*Genas v. State of N.Y. Dep't of Correctional Servs.*, 75 F.3d 825, 831 (2d
Cir. 1996) (citing *Sherbert v. Verner*, 374 U.S. 398, 403 (1963)).  An
individual may not be forced to "choose between following the precepts of
her religion and forfeiting benefits, on the one hand, and abandoning one of
the precepts of her religion in order to accept work, on the other hand."
*Sherbert*, 374 U.S. at 404.  At a minimum, an employee must allege that
the state action discriminated "against some or all religious beliefs or
regulates or prohibits conduct because it is undertaken for religious
reasons."  *Church of the Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520,
532 (1993).

Askew alleges that defendants, individually and as supervisors,
deprived her of, retaliated against her for, and prevented her from
exercising her religion.  Askew's factual allegations, which include denying
her the ability to engage in religiously-based activities unlike similarly
situated members of other faiths, demonstrate mistreatment and retaliation
against Askew on the basis of her status as a member and representative
of the Protestant faith.  Defendants counter that "[a]ny employment action
taken as to [Askew] will necessarily relate to religion in some fashion based

on the nature of [her] position." (*See* Def. Mem. of Law at 16, Dkt. No. 4:1.)

The court shares defendants' concerns about how to distinguish between

actions taken by Askew's supervisors out of a theistic animus and those

taken for administrative purposes.  Nonetheless, at this point in the

proceedings, based on the factual allegations discussed at length above

regarding the actions and omissions of Askew's immediate and

intermediate supervisors, the court concludes that Askew has sufficiently

pleaded a claim upon which relief can be granted under the First

Amendment Free Exercise Clause.  *See Ridgon v. Perry*, 962 F. Supp.

150, 162 & n.12 (D.D.C. 1997).

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 4) is

**GRANTED** insofar as:

1.    Askew's §§ 1981 and 1983 claims against defendants New

       York State and DOCS are dismissed;

2.    Askew's §§ 1981 and 1983 claims against defendants Glenn

       Goord and Brian Fischer are dismissed in their entirety;

3.    Askew's §§ 1981 and 1983 claims against the remaining

individual defendants in their official capacities are dismissed; and it is further

**ORDERED** that defendants' motion to dismiss is **DENIED** as to:

1.    Askew's Title VII claims against defendants New York State and DOCS;

2.    Askew's §§ 1981 and 1983 claims against defendants John Nuttall, Kenneth Perlman, Reinaldo Medina, Mary Bogan DeBelmonte, Mark Leonard, Omega Alston, Israel Rivera, Charles Harvey, Peter Brown, and Mark Miller, in their individual capacities; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 15, 2010
Albany, New York

United States District Court Judge